UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GUILIO MESADIEU,<br><br>              Plaintiff,<br><br>v.<br><br>CITY OF ELIZABETH, *et. al.*,<br><br>              Defendants. | Civ. Action No. 18-842 (JXN) (JBC)<br><br><br>**OPINION** |

**NEALS**, District Judge

      This matter comes before the Court on Defendant Officer Jose Martinez's ("Defendant" or "Martinez") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 45), which Plaintiff opposed (ECF No. 46), to which Defendant replied (ECF No. 49). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). After carefully considering the parties' written submissions, Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**[1]

      **A.  Local Civil Rule 56.1(a)**

      Before addressing the pertinent facts, the Court must briefly address which facts are undisputed in this record. Local Civil Rule 56.1(a) provides that opponents of summary judgment must furnish "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, *stating each material fact in*

---

[1] The Court addresses only the facts relevant to the Defendant at issue in the instant motion for summary judgment.

*dispute and citing to the affidavits and other documents submitted in connection with the motion*[.]" Local Civil Rule 56.1(a) (emphasis added). Expressing a general disagreement "without identifying the facts disputed and without [citing] to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment." *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011) (emphasis added); *see*, *e.g.*, *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, No. 12–3427, 2014 WL 268652, at *5 n. 4 (D.N.J. Jan. 23, 2014) (admonishing the defendant for falsely claiming that facts were in dispute, and noting that "any statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted.")

With those principals in mind, Plaintiff has failed to file a responsive statement of material facts addressing Defendant's statement of undisputed material facts. Rather, Plaintiff's brief in opposition to Defendant's motion for summary judgment includes a statement of facts section in which Plaintiff submits is his "rebuttal disputing [D]efendant's statement of undisputed material facts." (*See* ECF No. 46 at 2.) However, Plaintiff's "statement of facts" fails to address any specific material fact asserted by Defendant and fails to include any citations to record evidence. (*See id.* at 2-7.) Thus, Plaintiff's statement of facts "attempts to dispute a fact asserted and supported from the record by Defendants, without supporting his position with a citation to the record." *See Soto-Muniz v. Corizon, Inc.*, No. 10-3617, 2015 WL 1034477, at *3 n.3 (D.N.J. Mar. 10, 2015), aff'd sub nom. *Soto-Muniz v. Martin*, 665 F. App'x 226 (3d Cir. 2016).

Therefore, the following facts are drawn from Defendant's statement of material facts and accompanying exhibits, which are deemed admitted for the purpose of Defendant's motion in light of Plaintiff's failure to comply with Local Rule 56.1. However, considering Plaintiff's *pro se* status the Court will construe Plaintiff's statement of facts as a counter statement wherever possible and

if the record evinces a disputed fact. In addition, the facts have been taken in the light most favorable to Plaintiff as the non-moving party, with all reasonable inference drawn in his favor.

### B. Statement of Facts

Plaintiff's civil rights action arises from Defendant Martinez's alleged unlawful search and seizure of Plaintiff and his vehicle. It is undisputed that Plaintiff was involved in a motor vehicle stop on February 9, 2016. (*See* ECF No. 45-2, Def.'s Statement of Material Facts ("DSOMF") ¶ 15.) At that time, Defendant was assigned to the Detective Bureau in the Narcotics Division. (*Id.* ¶ 8.) On the day in question, an officer of the Elizabeth Police Department ("EPD") initiated a motor vehicle stop of Plaintiff's vehicle. (*Id.* ¶ 15.) Defendant submits that he ordered Plaintiff to exit the vehicle. (*Id.* ¶ 16.) Plaintiff testified that detectives approached Plaintiff's car with their guns drawn, pointing them at Plaintiff's head and making threats. (ECF No. 45-4, Ex. G, Pl. Dep. at 48:19-24.) Plaintiff alleges that Defendant "reached inside [his] window, open[ed] the car and dragged [him] out of the vehicle." (*Id.* at 49:9-11.) It is undisputed that once Plaintiff was out of his vehicle, Defendant conducted a pat-down search for weapons. (DSOMF ¶ 17, citing ECF No. 45-5, Ex. G at 51:10-13.) Defendant asked Plaintiff for consent to search his vehicle, which Plaintiff declined. (*Id.* ¶¶ 18-19; ECF No. 45-5, Ex. G at 53:7-9.)

Plaintiff was placed in the back of police vehicle. (*Id.* ¶ 21.) Defendant submits that officers called for a drug-sniffing dog from the Union County Sheriff's Office K-9 Unit. (*Id.* ¶ 20.) While Defendant was waiting for the K-9 Unit to arrive, he looked through the open driver's side window of Plaintiff's vehicle and observed a TD Bank money envelope containing what appeared to be a large amount of money on top of the center console. (*Id.* ¶ 23.) Defendant reached into the vehicle and removed the envelope and provided the envelope to Plaintiff to avoid accusations that the money was being stolen from him by police. (*Id.* ¶ 25.) Plaintiff testified that Defendant took the

money envelope from his vehicle and retained the envelope rather than giving it to Plaintiff. (ECF No. 45-4, Ex. G. at 58:16 to 59:10.) Plaintiff testified that Defendant searched his vehicle prior to the K-9 Unit arrival. (*Id.* at 54:16 to 60:25.)

The K-9 Unit arrived and following an exterior sniff, one of the canines gave a positive indication for narcotics on the passenger door. (DSOMF ¶ 27.) Plaintiff's vehicle was towed to the EPD in order to apply for a search warrant. (*Id.* ¶ 28.) Defendant then advised Plaintiff that he was going to temporarily take custody of the money he removed from the truck until the investigation was completed. (*Id.* ¶ 29.) A typed receipt for the money was provided to Plaintiff and Plaintiff refused to sign it. (*Id.* ¶ 30.)

Defendant appeared with Acting Assistant Prosecutor David Zeitzoff before the Honorable Stuart Peim, J.S.C. to apply for a search warrant of [sic] Plaintiff's vehicle. (*Id.* ¶ 31.) Judge Peim found that there was probable cause for a search warrant for Plaintiff's vehicle after hearing Defendant's testimony. (*Id.* ¶ 32.) Following the search, a handgun and the TD Bank money envelope containing $4,900 in U.S. currency were seized. (*Id.* ¶ 34.) Plaintiff was eventually found guilty of unlawful possession of a handgun, N.J.S.A. 2C39-5(b)(1), and being a certain person not to possess firearms, N.J.S.A. 2C:39-7(b)(1). (*Id.* ¶ 38.)

The reasons behind the motor vehicle stop are disputed. Defendant submits that on February 9, 2016, Defendant received a tip from a confidential informant ("CI") regarding Plaintiff. (DSOMF ¶ 9, citing ECF No. 45-4 at 80, Ex. F., Supplemental Investigation Report.) The CI advised Defendant Martinez that Plaintiff was "transporting large amounts of heroin in his black Dodge Ram pick-up truck bearing NJ registration number XDDB21." (*Id.* ¶ 10, citing ECF No. 45-4, Ex. F at 80.) In the nine (9) months prior to February 9, 2016, the CI had regularly provided Defendant with information regarding Plaintiff. (*Id.* ¶ 11, citing ECF No. 54-4, Ex. F at

80.) Defendant was also aware of Plaintiff's criminal history and that he was out on bail for a December 2013 arrest for possession of two (2) loaded handguns. (*Id.* ¶ 13, citing ECF No. 54-4, Ex. F at 79-80.) Defendant and other EPD officers were surveilling Plaintiff after the CI tip. (*Id.* ¶ 14.) Defendant submits that a motor vehicle stop was initiated by the EPD after the officers observed Plaintiff's vehicle crossing several lanes of traffic without signaling a lane change, almost causing an accident. (*Id.* ¶ 15., citing ECF No. 54-4, Ex. F at 81.)

Plaintiff testified that on February 9, 2016, he was stopped at a red light, in the middle of three lanes of traffic, at the intersection of North Avenue and Route 1, when officers pulled up behind his vehicle. (ECF No. 45-4, Ex. G, Pl. Depo, at 45:17 to 46:12.) The officer's vehicle had its overhead lights on, and Plaintiff began to pull over out of the way. (*Id.* at 47:5-20.) The police car followed behind Plaintiff and Plaintiff pulled over to the shoulder. (*Id.* at 47:21 to 48:6.) Plaintiff testified that the alleged CI that Defendant claimed gave him a tip did not exist. (*Id.* at 77:4-13.)

        **C.**   **Relevant Procedural Background**

On January 22, 2018, Plaintiff initiated this action by filing a complaint. (ECF No. 1.) The Honorable John Michael Vazquez, United States District Judge,[2] screened the complaint pursuant to 28 U.S.C. 1915(e)(2)(B) and proceeded only Plaintiff's § 1983 unlawful search claim against Defendant. (*See generally* ECF Nos. 5, 6.) All other claims were dismissed without prejudice. (*See id.*) The Court granted Plaintiff leave to file an amended complaint that cures the deficiencies set forth in the Court's opinion. (ECF No. 6.) Thereafter, Plaintiff filed a motion to stay proceeding because of a pending criminal in New Jersey state court. (ECF No. 9.) On March 13, 2020, Judge Vazquez denied Plaintiff's motion and again granted Plaintiff leave to file an amended complaint

---

[2] This matter was reassigned to the undersigned on June 30, 2021. (ECF No. 23.)

5

within in thirty days from receipt of the Court's Order. (ECF No. 11.) Plaintiff did not file an amended complaint. As a result, Defendant filed an answer to Plaintiff's initial complaint. (ECF No. 22.)

Defendant now moves for summary judgment, arguing Defendant's pat-down search and seizure of Plaintiff's cash did not violate Plaintiff's Fourth Amendment rights. (ECF 45-5.) Plaintiff opposed Defendant's motion (ECF No. 46), to which Defendant replied (ECF No. 49). Accordingly, briefing is complete, and this matter is ripe for determination.

## II. LEGAL STANDARD

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989). An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is "material" only if it influences the outcome under the applicable law. *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (1) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (2) that the nonmoving party has not shown facts relating to an essential element of the issue for which he bears the burden. *Celotex*, 477 U.S. at 323, 331. Once either showing is made, the burden shifts to the nonmoving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact. *Id.* To satisfy this burden, the non-moving party "may not rest upon

the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993). The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial. *Celotex*, 477 U.S. at 323–24. This is a rigorous burden for the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatte v. N.J. State Police*, 71 F. 3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberd*, 594 F.3d 210, 227 (3d. Cir. 2010).

### III. ANALYSIS

Defendant argues that he is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

#### A. Search of Plaintiff's Person

The Fourth Amendment protects people against unreasonable searches and seizures. A traffic stop is a "seizure" under the Fourth Amendment. *United States v. Johnson*, 452 F. App'x 219, 225 (3d Cir. 2011). Traffic stops fall within the framework for investigatory detentions articulated in *Terry v. Ohio*, 392 U.S. 1 (1968)). Under the *Terry* exception to the warrant requirement, an officer "may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has reasonable, articulable suspicion that criminal activity is afoot." *United States v. Brown*, 448 F.3d 239, 243 (3d Cir. 2006) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). After a car has been legally stopped, "the police may 'escalate' the encounter by visually inspecting the interior of the car, and checking credentials and asking questions of the occupants." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006). "[T]he

decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). Moreover, under *Mosley*, "any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *Id.*

Once an officer has properly stopped a vehicle, the officer may "exercise reasonable superintendence over the car and its passengers," including by ordering the driver out of the vehicle. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110-11 (1977)). If a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger," an officer may also frisk a person for weapons during an investigatory stop. *Terry*, 392 U.S. at 27. Such frisks are constitutional if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) (quoting *Terry*, 392 U.S. at 21).

Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *U.S. v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (citation omitted). "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether those historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion." *Orlenas v. United States*, 517 U.S. 690, 696 (1996).

Here, Defendant Martinez argues that he did not violate Plaintiff's constitutional rights when he conducted a pat-down search of Plaintiff because the totality of the circumstances supported a reasonable and articulable suspicion that Plaintiff possessed drugs or a gun. (*See* ECF

8

No. 45-5 at 11.) In response, Plaintiff argues that Defendant deliberately and intentionally violated Plaintiff's rights and illegally searched Plaintiff's person and vehicle. (*See* ECF No. 46 at 8-9.)

As an initial matter, the Court must first determine whether Plaintiff's vehicle was legally stopped. Defendant has provided his sworn application for a search warrant, which indicates that Defendant witnessed Plaintiff make a left hand turn without signaling and "abruptly change[] lanes across one, two, three lanes of traffic[.]"(*See* ECF No. 45-4 at 73, Ex. E.) Following this incident, Defendant requested that a marked car stop Plaintiff's vehicle. (*Id.*) Plaintiff denies Defendant's account, and argues that Defendant's claims in the sworn application are false. (*See* ECF No. 46 at 9-10.) Plaintiff, however, does not cite to any evidence in the record to support his argument. While the Court must take the facts in the light most favorable to the non-moving party when deciding a summary judgment motion, Plaintiff cannot oppose summary judgment by "rest[ing] on mere allegation or denial of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Thus, Plaintiff's allegations in his brief are not enough to create a disputed issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970) (unsworn statements in a brief do not constitute evidence for purposes of summary judgment); *Thornton v. United States*, 493 F.2d 164, 167 (3d Cir. 1974). Accordingly, based on the evidence in the records, there is no dispute that Defendant conducted a lawful traffic stop.

The Court must next address whether Defendant's protective frisk was justified. Defendant argues that (1) he had been advised by a reliable confidential informant that Plaintiff was usually armed with a handgun and (2) based on Defendant's own research, he was personally aware of Plaintiff's criminal history and previous arrest for unlawful possession of weapons. (*See id.*, citing ECF No. 54-4, Ex. F., Supplemental Investigation Report and Ex. O, Judgment of Conviction.) Plaintiff testified at his deposition that the alleged confidential informant that Defendant claimed

9

gave him a tip did not exist. (ECF No. 45-4, Ex. G at 77:4-13.) However, Plaintiff does not dispute that at the time of the traffic stop Defendant was aware of Plaintiff's criminal history and previous arrest for unlawful possession of weapons. The Court has reviewed the evidence of record and finds Defendant's knowledge of Plaintiff's criminal history is undisputed. Defendant's knowledge of prior arrests for unlawful possession of a weapon is a specific and articulable fact that supports the reasonableness of a pat-down search of Plaintiff during the traffic stop. Accordingly, Defendant's motion for summary judgment on Plaintiff's Fourth Amendment unlawful pat down claim is granted.

### B. Search of Plaintiff's Vehicle

The Court next turns to Plaintiff's claim that Defendant unlawfully searched his vehicle without a warrant. Defendant argues that he is entitled to summary judgment because the TD Bank envelope that he seized was in plain view. (*See* ECF No. 45-5 at 12-15.)

Warrantless searches of automobiles are generally per se unreasonable under the Fourth Amendment. *U.S. v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003); *Katz v. United States*, 389 U.S. 347, 357 (1967). The United States Court of Appeals for the Third Circuit has recognized the "broad sweep of the automobile exception," pursuant to which a vehicle may be searched without a warrant upon a showing of probable cause that evidence of a crime may be located in the vehicle. *United States v. Donahue*, 764 F.3d 293, 300 (3d Cir. 2014). "If probable cause justifies the search . . . , it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982). "The probable cause inquiry is 'commonsense,' 'practical,' and 'nontechnical'; it is based on the totality of the circumstances and is judged by the standard of "reasonable and prudent men." . . . "At bottom," the probable cause

analysis "deal[s] with probabilities." *United States v. Williams*, 898 F.3d 323, 340 (3d Cir. 2018) (quoting *Donahue*, 764 F.3d at 301 (internal quotation marks and citations omitted)).

The plain view exception permits police officers to immediately seize a suspicious object that they perceive while engaging in lawful activity. *United States v. Yamba*, 506 F.3d 251, 256-57 (3d Cir. 2007). An object is in plain view if "[t]he general public could peer into the interior" and observe it; the angle or position from which an officer looks into the car is irrelevant. *Texas v. Brown*, 460 U.S. 730, 740 (1983).

As explained above, Defendant submits that following the stop of Plaintiff's vehicle, officers called for a Union County Sheriff's Office K-9 Unit drug-sniffing dog. While awaiting the arrival of the K-9 Unit Defendant looked through the open driver's side window of Plaintiff's vehicle and observed a TD Bank money envelope containing what appeared to be a large amount of money on top of the center console. (*Id.* ¶¶ 20, 23.) Defendant states that he reached into the vehicle, removed the envelope, and provided the envelope to Plaintiff to avoid accusations that the money was being stolen from him by police. (*Id.* ¶ 25.) In contrast, Plaintiff testified that Defendant took the money envelope from his vehicle and retained the envelope rather than giving it to him.[3] (ECF No. 45-4, Ex. G. at 58:16 to 59:10.) Defendant asserts that the K-9 Unit arrived and following an exterior sniff, one of the canines gave a positive indication for narcotics on the passenger door. (DSOMF ¶ 27.) Plaintiff's vehicle was towed to the EPD in order to apply for a search warrant. (*Id.* ¶ 28.) Defendant submits that Plaintiff's vehicle was then searched following the procurement of a search warrant. (*Id.* ¶ 34.)

---

[3] Plaintiff alleged in his Complaint that Defendant removed the TD Bank envelope from Plaintiff's jacket pocket during the pat-down procedure. (*See* ECF No. 1 at 14.) However, Plaintiff's deposition testimony is consistent with Defendant's assertion that he removed the envelope from Plaintiff's vehicle.

Moreover, Plaintiff's sworn deposition testimony indicates that Defendant seized the TD Bank envelope when he initially removed it from the vehicle. (ECF No. 45-4, Ex. G. at 58:16 to 59:10.) Additionally, and more importantly, Plaintiff testified that prior to the K-9 Unit arriving and a search warrant being procured, Defendant not only removed the TD Bank envelope of Plaintiff's vehicle, but Defendant "opened both the front driver's side door and the back [] passenger side door on the driver's side while the other detectives opened up passenger side door and the back passenger side door and began to search wildly moving things around, my tools, my [] paperwork." (ECF No. 45-4 at 56:18-24.) While Defendant appears to characterize Plaintiff's unlawful vehicle search claim as pertaining only to the removal of the TD Bank envelope, Plaintiff also alleges that Defendant searched Plaintiff's whole vehicle prior to the K-9 Unit's arrival on the scene. Based on the evidence in the record, there is a dispute of material fact regarding when the initial search of Plaintiff's vehicle took place. The Court notes that Defendant did not address Plaintiff's testimony that he searched the vehicle before procuring a search warrant. Defendant also did not address whether probable cause existed for a warrantless search of the vehicle prior to the positive canine sniff. Accordingly, Defendant's motion for summary judgment on Plaintiff's Fourth Amendment unlawful search of his vehicle claim is denied.[4]

---

[4] In his opposition brief, Plaintiff also argues that when Judge Vazquez screened the Complaint, Defendant Robert Keily was "mistakenly dismissed without prejudice." (*See* ECF No. 46 at 2.) Plaintiff claims that because the Court was unable to distinguish between Plaintiff's writing of the names Kelly and Keily, the Court mistakenly dismissed a claim against Robert Keily as being brought against a defendant Kelly. (*Id.*) Plaintiff acknowledges that he was given leave to amend his Complaint and he failed to submit an amended complaint. (*Id.* at 11.) Plaintiff requests that the Court "re-review the initial complaint" regarding Robert Keily. If Plaintiff is attempting to bring a motion for reconsideration pursuant to Local Civil Rule 7.1(i), such a motion is time barred. The rule provides that such motions must be made within fourteen days of the entry of an order. L. Civ. R. 7.1(i). The time for filing a motion for reconsideration expired on October 18, 2019, fourteen days after the October 4, 2019 screening Opinion was filed. Additionally, on October 4, 2019, the Court provided Plaintiff leave to file an amended complaint and Plaintiff failed to do so. (*See* ECF No. 6.) On March 13, 2020, the Court again provided Plaintiff time to file an amended complaint, which Plaintiff did not avail himself of. (*See* ECF No. 11.) Plaintiff cannot amend his Complaint through argument in his brief in opposition to Defendant's motion for summary judgment. *See Harmon v. Sussex County*, 810 F. App'x 139, 142 (3d Cir. Apr. 8, 2020) (Finding it was permissible for the district court to reject an argument on the ground that the plaintiff had not raised it in her complaint and could not amend her complaint through arguments presented in a response to the defendants' motion for summary judgment) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781

IV.     **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment (ECF No. 45) is **granted in part and denied in part**. The motion for summary judgment is denied as to Plaintiff's Fourth Amendment unlawful search of his vehicle. The motion for summary judgment is granted as to Plaintiff's Fourth Amendment unlawful search of his person. An appropriate Order accompanies this Opinion.

|  |  |
|---|---|
| DATED: March 24, 2023 | s/ Julien Xavier Neals<br>**JULIEN XAVIER NEALS**<br>United States District Judge |

---

(7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.")); *Greene v. Virgin Islands Water & Power Authority*, 557 F. App'x 189, 193 (3d Cir. Feb. 11, 2014) (noting that plaintiff's arguments raised in opposition to summary judgment cannot serve as an independent basis for amendment of the pleadings) (citing *Shanahan*, 82 F.3d at 781).